UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON FEKRAT,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNITED STATES OF AMERICA, THE<br>GEO GROUP, INC., MANAGEMENT<br>& TRAINING CORPORATION, and<br>JOHN DOES 1-9,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. CV 13-00594 MMM (PJWx)<br><br>ORDER ON DEFENDANT UNITED<br>STATES OF AMERICA'S  MOTION TO<br>DISMISS |

On January 28, 2013, plaintiff Ron Fekrat filed this action against the United States of America ("the United States"), the GEO Group, Inc. ("the GEO Group"), Management & Training Corporation ("MTC"), and certain fictitious defendants (collectively "defendants").[1]  On February 25, 2013, the GEO Group and MTC filed an answer to Fekrat's complaint.[2]  The United

---

[1]Complaint, Docket No. 1 (Jan. 28, 2013).

[2]Defendants The GEO Group, Inc., and Management & Training Corporation's Answer to Plaintiff's Complaint, Docket No. 13 (Feb. 25, 2013).

States, however, filed a motion to dismiss for lack of jurisdiction on April 11, 2013,[3] and a supplement to the motion on April 15, 2013.[4]  Fekrat filed opposition on June 17, 2013.[5]

## I.  FACTUAL BACKGROUND

### A.  Fekrat's Factual Allegations

On or about March 5, 2009, Fekrat was convicted of conspiracy and fraudulent use of access device,[6] and was sentenced to three years in federal prison.[7]  In 2010, the Federal Bureau of Prisons ("the BOP"), which is an agency of the United States, designated Fekrat to Taft Correctional Institution ("Taft"), a prison facility located in Kern County, California.[8]

Fekrat was at the Taft facility from June 1 to November 11, 2010.[9]  He alleges that during this time, he contracted Coccidioidomycosis (also known and referred to hereafter as "Valley Fever")[10] due to defendants' negligence and wrongful acts and omissions.[11]  Specifically, Fekrat contends that defendants failed to take steps to (1) protect the inmates at Taft from inhaling naturally occurring airborne dust generated by the desert winds; (2) provide special protective

---

[3]Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction ("Motion"), Docket No. 26 (Apr. 11, 2013).  See also Defendant United States' Reply Brief ("Reply"), Docket No. 38 (June 24, 2013).

[4]Defendant United States' Supplemental Brief, Docket No. 30 (Apr. 15, 2013).

[5]Plaintiff's Opposition to United States of America's Motion to Dismiss for Lack of Jurisdiction ("Opposition"), Docket No. 37 (June 17, 2013).

[6]Complaint, ¶ 39.

[7]*Id.*, ¶ 40.

[8]*Id.*, ¶¶ 2, 40.

[9]*Id.*, ¶ 44.

[10]Valley Fever is an infectious disease that is contracted by inhaling an airborne fungus endemic in the soil of various areas of the Southwest.  It is most prevalent in Kern County in the San Joaquin Valley, where the Taft facility is located.  (*Id.*, ¶ 16.)

[11]*Id.*, ¶¶ 2, 42.

breathing masks or other devices; (3) prohibit outdoor activities during dusty conditions; and (4) isolate the dust from the inmates.[12]

Fekrat asserts that defendants were on notice of the risk of harm from Valley Fever, yet failed to take actions to protect him from that harm.[13] In 2003, an increased number of the inmates at Taft tested positive for Valley Fever.[14] As a result of the outbreak, which lasted until 2005, several inmates at Taft fell ill and at least one died.[15] Thereafter, the BOP contacted the Center for Disease Control ("CDC") to develop and implement a plan to control the outbreak.[16] Eventually, the BOP and the CDC developed a policy that purportedly protected infected inmates, as well as non-infected inmates who suffered from other medical conditions.[17]

Fekrat was diagnosed with Valley Fever on November 8, 2010.[18] He alleges that prior to entering federal custody, he had not previously been exposed to Valley Fever.[19] He also asserts that prior to being designated to Taft, he did not travel to Kern County and was in reasonably good health.[20] Since contracting Valley Fever, Fekrat has experienced and continues to experience physical pain and suffering from the symptoms[21] of Valley Fever; he asserts his quality of life has

---

[12]*Id.*, ¶ 42.

[13]*Id.*, ¶ 22.

[14]Opposition at 3 (citing Declaration of Ian Wallach in Support of Plainitff's Opposition to Defendant United States of America's Motion to Dismiss ("Wallach Decl."), Docket No. 37-2 (June 17, 2013), ¶ 8).

[15]Opposition at 3 (citing Wallach Decl., ¶¶ 12-14).

[16]*Id.* (citing Wallach Decl., ¶ 15).

[17]*Id.* at 4 (citing Wallach Decl., ¶ 18).

[18]*Id.*, ¶ 43.

[19]*Id.*, ¶ 40.

[20]*Id.*, ¶¶ 40, 41.

[21]Symptoms include a high temperature, constant coughing, loss of appetite, night sweats and chills, open sores on the body, and weakness and fatigue. (*Id.*, ¶ 43.)

deteriorated as a result.[22] Thus, Fekrat pleads claims for failure to provide inmates with a safe and habitable prison, failure to operate and maintain the prison facility in safe and habitable conditions (premises liability), and breach of duty of care.[23]

## B. Facts Concerning Taft Correctional Institution

In July 1997, the BOP awarded the initial contract for the operation and management of Taft to Wackenhut Corrections Corporation ("Wackenhut").[24] In 2003, Wackenhut changed its corporate name to the GEO Group.[25] The contract between the BOP and the GEO Group was a performance-based contract.[26] Under the terms of the agreement, the GEO Group determined the day-to-day procedures and practices that would achieve the performance goals set forth in the contract.[27] In April 2007, the BOP awarded the contract for operation and management of Taft to MTC.[28] Similar to its contract with the GEO Group, the contract between the BOP and MTC was performance-based, and MTC determined the day-to-day procedures and practices that would achieve the performance goals.[29]

Four BOP employees worked on-site at Taft while Fekrat was incarcerated there. As part of their duties, the BOP employees were required to know the obligations and responsibilities

---

[22]*Id.*, ¶ 48.

[23]*Id.*, ¶ 50-68. The breach of duty of care claim is specific to the United States.

[24]Declaration of Douglas Martz in Support of Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction ("Martz MTD Decl."), Docket No. 26-1 (Apr. 11, 2013), ¶ 9

[25]*Id.*

[26]*Id.*, ¶ 10.

[27]*Id.*

[28]*Id.*, ¶ 21.

[29]*Id.*, ¶ 22.

delegated to the independent contractors and to monitor their performance.[30] If the BOP employees learned of instances in which the GEO Group or MTC were not fulfilling their contractual obligations, they were required to report this to the BOP's Contracting Officer.[31] The BOP employees sometimes visited housing units, and reviewed and inspected the cleanliness and sanitation of Taft.[32] None worked in the Health Services Unit, Administration, Food Service, or Maintenance departments at Taft.[33] No BOP employee held the position of warden or correctional officer at Taft, and no BOP employee was responsible for inmate safety and security, building and grounds maintenance, sanitation, health services, inmate orientation, inmate education, inmate recreation, inmate employment, inmate discipline, or any other aspect of day-to-day operations at Taft.[34]

## II. DISCUSSION

### A.    Legal Standard Governing Motion to Dismiss Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and may only hear a case as authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (citing *Stevedoring Services of Am., Inc. v. Eggert*, 953 F.2d 552, 554 (9th Cir. 1992); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)) (internal quotation marks omitted).

---

[30]Declaration of Glenn Harvey in Support of Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction ("Harvey Decl."), Docket No. 26-2 (Apr. 11, 2013), ¶ 11; Declaration of Tony Strauss in Support of Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction ("Strauss Decl."), Docket No. 26-3 (Apr. 11, 2013), ¶ 12.

[31]*Id.*

[32]Harvey Decl., ¶ 47.

[33]Harvey Decl., ¶ 17; Strauss Decl., ¶ 18.

[34]*Id.*

Thus, jurisdiction must be established as a threshold matter before the merits of the dispute can be considered. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998). Claims over which the court lacks jurisdiction must be dismissed. See *High Country Res. v. F.E.R.C.*, 255 F.3d 741, 747 (9th Cir. 2001). As the party who filed the action in federal court, the plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction to hear the action. See *Kokkonen*, 511 U.S. at 377; *Stock West,* 873 F.2d at 1225.

A party may challenge subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. FED.R.CIV.PROC. 12(b)(1). The party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or . . . attack[ ] the existence of subject matter jurisdiction in fact").

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Consequently, there is an important difference between Rule 12(b)(1) motions that attack the complaint on its face and those that rely on extrinsic evidence. In ruling on the former, courts must accept the allegations of the complaint as true. See *Valdez v. United States*, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, 56 F.3d 1177 (9th Cir. 1995). In deciding the latter, courts may weigh the evidence presented and determine the facts in order to evaluate whether they have the power to hear the case. See *Lee*, 227 F.3d at 1242 ("With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. . . . It also need not presume the truthfulness of the plaintiffs' allegations").

The government has proffered declarations and documents in support of motion, mounting a factual attack on subject matter jurisdiction. The Ninth Circuit has held that the district court should apply a standard similar to that used in deciding summary judgment motions to a factual attack asserted under Rule 12(b)(1). Evidence outside the pleadings may be considered, but all factual disputes must be resolved in favor of the nonmoving party. See *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[W]e will consider items outside the pleading that were considered by the district court in ruling on the 12(b)(1) motion, but resolve all disputes of fact in favor of the non-movant. . . . [T]he standard we apply upon *de novo* review of the record is similar to the summary judgment standard that the district court purported to apply"); *In re Facebook Privacy Litigation*, 792 F.Supp.2d 705, 710 (N.D. Cal. 2011) ("[I]n the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject-matter are viewed in the light most favorable to the opposing party. The disputed facts related to subject-matter jurisdiction should be treated in the same way as one would adjudicate a motion for summary judgment" (internal citation omitted)); *Ambros-Marcial v. United States*, 377 F.Supp.2d 767, 771 (D. Ariz. 2005) ("Where a motion 'properly should be labeled a dismissal for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1),' the Court may 'consider items outside the pleading . . . but [shall] resolve all disputes of fact in favor of the non-movant . . . similar to the summary judgment standard . . . ,'" quoting *Dreier*, 106 F.3d at 847). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

**B.      Whether the Court Has Subject Matter Jurisdiction to Hear the Claims Alleged Against the United States**

The United States asserts that it should be dismissed because the court does not have subject matter jurisdiction to hear the claims Fekrat asserts against it.[35]   The United States

---

[35]Motion at 1.

contends that Fekrat's claims fall within the "independent contractor" exception to the Federal Tort Claims Act ("FTCA"),[36] and thus fail as a matter of law.[37]

### 1.  The Independent Contractor Exception to the FTCA

As a general matter, the United States, as sovereign, is immune from suit unless it consents to be sued.  See, e.g., *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  The FTCA permits parties to assert tort claims against the United States under particular circumstances, and thus effects a limited waiver of sovereign immunity.  See 28 U.S.C. § 1346.[38]  This waiver extends only to "the negligent or wrongful act or omission of any employee of the Government."  28 U.S.C. § 1346(b)(1).  Under the FTCA's definition of an "employee of the government," employees include officers or employees of any federal agency, as well as members of the military or naval forces.  28 U.S.C. § 2671.  It also includes "persons acting on behalf of a federal agency."  *Id*.  The statute expressly excludes from the definition of "federal agency," however, "any contractor with the United States."  *Id*.  Thus, the FTCA does not waive the United States' immunity from liability for the negligent or wrongful acts or omissions of independent contractors.  See *United States v. Orleans*, 425 U.S. 807, 814 (1976) ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver," citing *Dalehite v. United States*, 346 U.S. 15, 30-31 (1953)).

The independent contractor exception, however, has limitations.  The United States can be subjected to liability for the acts of its contractors if the plaintiff shows that the government

---

[36]*Id.*

[37]*Id.*

[38]In relevant part, § 1346(b)(1) provides: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

controlled and supervised the "detailed physical performance" and "day-to-day operations" of the contractor.[39] *Autery*, 424 F.3d at 956 (citing *Hines*, 60 F.3d at 1446); see *Orleans*, 425 U.S. at

---

[39]There has been some debate concerning the proper interpretation of this standard. Some courts have noted a distinction between the *right* to control and *actual* control. See *Vallier v. Jet Propulsion Lab.*, 120 F.Supp.2d 887, 895 (C.D. Cal. 2000) ("The government and plaintiffs assert that the precise question to be answered is whether the government actually exercised control over the detailed physical performance of Caltech's services. Caltech, however, contends that it need not show actual supervision and control and that the correct standard is whether the government has the right to supervise and control Caltech, even if the government did not exercise that right"); *Scallorn v. United States*, No. C 94-2621 CW, 1996 WL 478973, *3 (N.D. Cal. Aug. 13, 1996) ("The use of these two rules has fostered a persistent ambiguity in independent contractor exception cases. . . . In *Logue*, the Court utilized the 'right to control' language, and in *Orleans* it used the 'is controlled' language of the Restatement"). In *Vallier*, Judge Christina Snyder of this district concluded that "[a] review of the Ninth Circuit case law interpreting *Logue* and *Orleans* supports application of the 'actual control' standard. . . ." *Vallier*, 120 F.Supp.2d at 895. The Ninth Circuit affirmed her decision in an unpublished decision.

The court finds the reasoning of *Vallier* persuasive. The published Ninth Circuit cases interpreting *Logue* and *Orleans* that are cited in the Judge Snyder's *Vallier* opinion clearly require that the government exercise "actual control" over a contractor before it can be held liable for its conduct under the FTCA. See *Hines v. United States*, 60 F.3d 1442, 1446–47 (9th Cir. 1995) ("critical question is whether the government supervises and controls the day-to-day operations"); *Laurence v. Department of the Navy*, 59 F.3d 112, 114 (9th Cir. 1995) (concluding that there was an independent contractor relationship because the government did not "exercise [ ] the requisite 'substantial supervision' by controlling the detailed physical performance and day-to-day work of [the contractor]"); *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987) ("there must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee"). The court's review of Ninth Circuit cases issued since Judge Snyder considered this question confirms, moreover, that an "actual control" standard applies in this circuit. See *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) ("The ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees. Rather, there must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee. Applying these standards, Plaintiffs cannot dispute that Fluor and DynCorp and HFD are government contractors. . . . [A]ll indications are that the government did not direct the actual performance of the contract . . . . Plaintiffs don't argue, and the complaint does not allege, that the government supervised or directed . . . [the] day-to-day operations of HFD as to maintaining firebreaks on the ALE near SR-24 so as to render any HFD employee a de facto government employee" (internal quotation marks and citations omitted)); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1184-85 (9th Cir. 2004) ("Because tort liability follows agency principles, the key factor is the extent to which the federal government exercises control over the day to day operations of the entity. . . . There is no evidence in the record that indicates that the federal

1    816; *Logue*, 412 U.S. at 529.

2        **2.    Whether the Independent Contractor Exception Bars Fekrat's Claims**

3        The government contends that it should not be subject to liability for the alleged

4    wrongdoing of its contractors for the reasons stated by the Supreme Court in *Logue* and by the

5    Ninth Circuit in *Monroe v. U.S. Marshals*, No. 95-35716, 1996 WL 665147 (9th Cir. Nov. 15,

6    1996) (Unpub. Disp.).[40]

7        In *Logue*, the parents of a man who committed suicide while he was a federal prisoner

8    confined in a county jail filed an FTCA wrongful death suit against the United States. 412 U.S.

9    at 521. The decedent had already attempted to commit suicide on the day of his initial

10   incarceration. *Id.* at 524. As a result, he was admitted to a hospital, and the district court issued

11   an order directing that he be transferred to a federal medical facility. *Id.* Prior to his transfer,

12   however, federal officials made arrangements to transfer Logue back to the county jail after

13   requesting and being told that he would be placed in a special cell from which all dangerous

14   objects had been removed. *Id.* Logue was placed in such a cell, but no arrangements were made

15   to watch him constantly while confined. Rather, jail employees made only periodic checks. *Id.*

16   at 524-25. The day after his return to the jail, Logue attempted suicide again and succeeded. *Id.*

17   at 525.

18       The district court held that the United States was liable on a negligence theory, even though

19

20   _____

21   government exercises extensive control over the Cooperative's daily operations"); see also *Kiskila*
     *v. United States*, 472 Fed. Appx. 815, 816 (9th Cir. Apr. 30, 2012) (Unpub. Disp.) ("Dr.
22   Osvaldo Lopez, was an independent contractor, not a federal employee under the FTCA, in that
     the government did not control Dr. Lopez's actions in 'diagnosing and treating patients'");
23   *Johnson v. United States*, 132 Fed. Appx. 715, 715 (9th Cir. May 23, 2005) (Unpub. Disp.)
     ("Although Debbie Hill was a contractor, the evidence clearly indicates that the USPS controlled
24   the detailed physical performance of her position and exercised substantial supervision over her
     day-to-day activities. . . . Such control renders inapplicable the independent contractor exception
25   to the FTCA . . . . The relevant inquiry is whether, despite her contractor status, the USPS
     exercised substantial control over Hill's daily activities" (internal quotation marks and citations
26   omitted)). Consequently, the court will apply an "actual control" standard in this order.

27

28       [40]Motion at 13.

                                          10

the federal government had contracted with the county jail for the detention of federal prisoners. *Id.* at 521. The court of appeals reversed, applying the independent contractor exception. *Id.* The Supreme Court ultimately agreed with the court of appeals that the government was not liable for the negligence of the county jail employees. *Id.* at 530. It noted that the contract between the federal government and the county gave "the United States no authority to physically supervise the conduct of the jail's employees; it reserve[d] to the United States only 'the right to enter the institution . . . at reasonable hours for the purpose of inspecting the same and determining the conditions under which federal offenders are housed.'" *Id.* The court further noted that the statute that imposes a duty of care on the BOP (18 U.S.C. § 4042) authorized the government to contract with state and local authorities to provide safekeeping and care. *Id.* at 528-29. It concluded that "Congress not only authorized the Government to make contracts such as the one here in question, but rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor. . . ." *Id.* at 529. As a result, the Court held, the government was not liable under the independent contractor exception.[41] *Id.* at 532.

The Ninth Circuit considered a similar contractual arrangement in *Monroe*. The plaintiff, a federal prisoner, alleged that the negligence of the United States Marshal Service caused her to develop lupus while temporarily housed at the City of Kent correctional center. The United States proffered evidence that it had contracted with the City of Kent to provide temporary custody for federal prisoners, and that the Marshals were not responsible for the day-to-day operations of the jail. *Id.* The district court granted summary judgment in favor of the United States. *Id.* On appeal, the Ninth Circuit affirmed the district court's ruling, holding that the United States was not liable under the FTCA for the actions of the correctional center's employees. *Id.* The court rejected plaintiff's argument that the Marshals' inspections of the correctional center were sufficient to give rise to liability under the FTCA. *Id.* ("Monroe's argument that the Marshals' inspections preclude the jail from contractor status is without merit").

---

[41]The case was remanded, however, so that the district court could consider the government's liability to the extent based on the negligence of a United States Marshal employee.

The government asserts that, like the County in *Logue* and the City of Kent in *Monroe*, MTC and the GEO Group were solely responsible for the operation, maintenance, and security of the prison under their contracts with the federal government.[42] It argues that BOP did not exercise day-to-day control over the operations of the prison contractors during Fekrat's time at Taft, and thus that the independent contractor exception bars Fekrat's claims against it.

"In applying *Logue* . . . to any contract to perform services on behalf of the United States, the contract and its terms in fixing the relationship of the offending party are critical."[43] *Sneed v. United States*, No. 91-0613 FM S, 1992 WL 584067, *2 (N.D. Cal. Nov. 23, 1992) (citing *Wood v. Standard Products, Inc.*, 671 F.2d 825, 829 (4th Cir. 1982)). Throughout the contract between the BOP and the GEO Group, the GEO Group is explicitly denominated "the contractor."[44] The same is true of the contract between the BOP and MTC.[45] The contracts do not refer to GEO or MTC personnel as BOP employees. See *Jackson v. Grondolsky*, Civil No. 09–5617 (NLH/KMW), 2012 WL 960450, *9 (D.N.J. Mar. 20, 2012) (holding, with respect to a contract specifically stating that "[t]his is a contractual arrangement and not a personnel appointment," that the independent contractor exception barred a claim against the government based on the contractor's negligence, even though the contract granted the government the right to "observe the service as rendered by the contractor"); *Sneed*, 1992 WL 584067 at *2 (finding that a doctor under contract to United States Navy was an independent contractor for FTCA purposes because "the contract expressly provides that the parties considered [the doctor] to be an independent contractor").

---

[42]*Id.*

[43]The fact that another court in this district has held that the independent contractor exception applied to the claims of a detainee who contracted Valley Fever at a different facility is of limited relevance, given that the case involved a different contractor and a different federal agency, operating under a different contract. (See generally Supplement (citing *Murugesapillai v. Antelope Valley Med Ass'n*, CV 09-1514 R (Ex)).)

[44]Government's Evidentiary Appendix, Docket No. 41 (July 12, 2013), Exh. A.

[45]Government's Evidentiary Appendix, Exh. B.

Most significantly, both the GEO Group and MTC contracts provide that the contractor shall "assume full responsibility for the operation, maintenance and security of the institution."[46] The language of BOP's contracts with the entities indicates, therefore, that BOP lacked day-to-day control over the facility's operations and maintenance. See *Orleans*, 425 U.S. at 815 ("Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees. In short it could take action to compel compliance with federal standards, but it did not supervise operations"); *Logue*, 412 U.S. at 529-30 (in "[t]he contract entered into between the Government and Nueces County . . . [t]he county undertakes to provide custody in accordance with the Bureau of Prisons' 'rules and regulations governing the care and custody of persons committed' under the contract. . . . But the agreement gives the United States no authority to physically supervise the conduct of the jail's employees; it reserves to the United States only 'the right to enter the institution . . . at reasonable hours for the purpose of inspecting the same and determining the conditions under which federal offenders are housed"); *Vallier*, 120 F.Supp.2d at 909 ("[T]he contracts at issue in the present case consistently provide that Caltech is a contractor. Nowhere do the contracts provide that Caltech is a government agent. Moreover . . . the evidence submitted by Caltech does not demonstrate that the government actually supervised and controlled the day-to-day waste disposal operations at JPL"); *Shivcharan v. United States*, No. 04 CV 1296(SJ), 2005 WL 408046, *2 (E.D.N.Y. Feb. 15, 2005) ("The Arco contract states that Arco will 'maintain project(s) in a decent, safe, and sanitary condition,' including 'provid[ing] day-to-day maintenance operation[s].' Subcontractor Lance agreed to 'take proper safety and health precautions to protect . . . workers[.]]' It is evident that the contractor and subcontractor assumed responsibility for day-to-day operations, without detailed supervision of their performance by the United States, and that they therefore cannot be classified as 'employees' for purposes of the FTCA. Plaintiffs' claim

---

[46]Government's Evidentiary Appendix, Exh. A at 5; *id.*, Exh. B at 11.

must therefore be dismissed").

This case differs somewhat from *Logue* and *Monroe* in that there are BOP employees who have permanent work stations at Taft.[47] The government argues, however, that the four BOP employees located at the Taft facility simply observed and monitored the GEO Group's and MTC's contractual performance, and did not actively supervise that performance.[48] See *Savary v. United States*, No. 98-55637, 1999 WL 1178956, *2 (9th Cir. Dec. 14, 1999) (Unpub. Disp.) ("Although NASA clearly exercised some degree of general supervision, it did not exercise the sort of substantial supervision over day-to-day responsibilities that would nullify the application of the [independent contractor] exception here. The contracts between both Caltech and the Army and Caltech and NASA set out only a broad, general framework for the contractual relationship. Although NASA managers had an obligation to ensure that Caltech complied with the contractual terms, Caltech was responsible for determining how it would comply with those terms"). The government adduces evidence that the on-site BOP employees did not provide any detention or healthcare services for inmates and had no authority to assign work to or transfer work from the GEO Group and MTC personnel.[49] Indeed, the government notes, the office where the BOP employees worked was outside barbed wire fence surrounding the correctional institution.

Fekrat has adduced no evidence that the on-site BOP employees assumed a more proactive role at the facility than described by the government. Compare *Farley v. United States*, No. 11–cv–198S, 2012 WL 713399, *4 (W.D.N.Y. Mar. 5, 2012) (although the contract did not suggest that federal officials exercised day-to-day supervision over an immigration detention center operated by a private contractor, facts adduced by plaintiff did, as they demonstrated that "at least one [federal] facility manager was on duty during each of the three eight-hour work shifts"; "facility managers would . . . conduct at least one set of rounds through the building per shift"; and plaintiff proffered evidence that federal employees took a "proactive role in their interactions

---

[47]Harvey Decl., ¶ 14; Strauss Decl., ¶ 15.

[48]Motion at 13.

[49]*Id.*

14

with [the contractor's] employees" – by instructing them to locate and transport particular detainees, "personally com[ing] to the housing units and tak[ing] charge of detainees," "instruct[ing] [contractor] personnel regarding where detainees were to be placed, which detainees should be kept separate from each other, and when a detainee was to be put on 24 lock down,"and making the decision to release the detainee who assaulted plaintiff from the special housing unit); *Cesar v. Achim*, No. 07C128, 2009 WL 2225414, *2 (E.D. Wis. July 22, 2009) (the independent contractor exception did not apply where plaintiff alleged that "federal employees had personal involvement in the claims at issue – that they were aware, for example, of the [contractor's] failure to provide plaintiff with adequate medical care but did nothing to remedy it," and that they "confiscated some of plaintiff's medication and did not return it to him").

    Although Fekrat cites evidence that BOP personnel contractually reserved and exercised the right to inspect the institution, such inspections do not constitute day-to-day control absent proactive conduct that extends beyond a supervisory role. *Monroe*, 1996 WL 665147 at *1; *Letnes*, 820 F.2d at 1519 (the government's right to conduct detailed inspections does not abrogate the independent contractor exception); see also *Orleans*, 425 U.S. at 814-15 ("In *Logue* this Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for their torts. Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees. In short it could take action to compel compliance with federal standards, but it did not supervise operations," citing *Logue*, 412 U.S. at 528). Given the lack of contradictory evidence, the proof proffered by the government establishes that the United States did not exercise control over the physical performance and day-to-day operations of the independent contractors through its on-site personnel. See *Laurence v. United States*, 851 F.Supp. 1445, 1453 (N.D. Cal. 1994) (holding that the United States was not liable for a contractor's acts because the "evidence supporting the assertion of active government involvement or supervision

15

is minimal or non-existent").

Fekrat concedes that the United States delegated responsibility for "the majority of day-to-day operations at Taft CI" to its contractors.[50] He argues, however, that BOP maintained control over operations related to the Valley Fever epidemic at Taft.[51] He proffers evidence that the BOP contacted the CDC, developed a program to address the Valley Fever epidemic at Taft, and mandated compliance with that program.[52] In the course of doing so, Fekrat asserts, it chose to abandon the CDC's study of the implementation of preventative measures, and focused solely on early diagnosis and treatment.[53]

The facts that BOP adopted a policy to address the early diagnosis and treatment of Valley Fever, and directed the GEO Group and MTC to implement it does not, however, show that it maintained control over the day-to-day formulation and implementation of preventative measures at Taft. "The United States may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Autery*, 424 F.3d at 957 (quoting *Orleans*, 425 U.S. at 816). "The Ninth Circuit has explained that 'detailed regulations and inspections are [not] evidence of an employee relationship. . . . [T]he ability to compel compliance with federal regulations does not change a contractor's personnel into federal employees.'" *Vallier*, 120 F.Supp.2d at 908 (quoting *Letnes*, 820 F.2d at 1519). Consequently, the evidence Fekrat has proffered concerning the BOP's response to the Valley Fever epidemic does not demonstrate that the United States exercised control over the detailed performance and day-to-day operations of the Taft contractors as it concerned preventing the spread of the disease.

---

[50]Declaration of Jason K. Feldman in Support of Plaintiff's Opposition to Defendant United States of America's Motion to Dismiss ("Feldman Decl."), Docket No. 37-1 (June 17, 2013), ¶ 3.

[51]*Id.*, ¶¶ 3, 4; Opposition at 10.

[52]Opposition at 10-11 (citing Wallach Decl., ¶¶ 15-18; *id.*, Exh. M-P).

[53]*Id.* at 11 (citing Wallach Decl., ¶ 9; *id.*, Exh. H at 2.).

### 3. Whether the Government Is Liable for its Own Negligence

Fekrat argues that the allegations in the complaint allege that the United States is liable in tort for the BOP's own actions and omissions, not those of an independent contractor.[54] He asserts that his direct allegations against the United States establish liability that is separate and distinct from any theory of liability that is barred by the independent contractor exception. Specifically, Fekrat contends that the government had an independent duty as a landowner either to safeguard against or warn of a known danger on its property. See *Kinsman v. Unocal Corp.*, 37 Cal.4th 657, 672 (2005); see also *Peterson v. San Francisco Community College Dist.*, 36 Cal.3d 799, 815 (1984). He asserts that the BOP breached this duty by failing to take precautionary measures to mitigate inmates' potential for contracting Valley Fever.[55] Fekrat also asserts that the United States had an independent, non-delegable duty to provide him with suitable housing under 18 U.S.C. § 4042, which it breached by: (1) incarcerating him at Taft, which it knew to be located on a site regularly immersed in dust containing Valley Fever spores, and (2) failing to implement or arrange for the implementation of preventative measures that could have protected him from infection.[56] See 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons, under the direction of the Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States").

The government counters that the claims Fekrat asserts against the BOP based on its alleged negligence are "subsumed" within the BOP's contract with MTC.[57] As a result, it asserts, the claims are also precluded by the independent contractor exception.[58] As examples, the government cites Fekrat's allegations that he contracted Valley Fever because the BOP failed to

---

[54]*Id.* at 8.

[55]*Id.*

[56]*Id.* at 9-10.

[57]Reply at 2.

[58]*Id.*

prohibit outdoor activities during windy and dusty conditions; failed to install special air conditioning filters or provide him with a protective breathing mask; and failed to water or oil down dust around the facility.[59] The government contends that the BOP's contract with MTC delegated to MTC full responsibility for determining when inmates could use the outdoor recreation area; for operating and maintaining the physical plant of the prison (including ventilation systems); and for cleaning and maintaining the prison grounds.[60] It asserts, as a result, that "every negligent act or omission that Plaintiff alleges against the government is an act or omission that the BOP rightfully delegated to MTC."[61]

The court agrees that the preventative measures that the BOP purportedly failed to implement fall within the scope of its contracts with the GEO Group and MTC. During the time Fekrat was incarcerated at Taft, it was MTC's contractual responsibility to maintain proper sanitation at the institution.[62] The sanitation provisions in the BOP's contracts with the GEO Group and MTC made the contractors responsible for controlling dust and dirt.[63] Inmate recreation was also MTC's responsibility.[64] According to the BOP officials responsible for monitoring the GEO Group's and MTC's performance of their contractual obligations, closing the recreation yard to inmates on days when it was very windy was a precaution that could only be

---

[59]Known remedial measures utilized to prevent Valley Fever purportedly include paving over grassy or dusty areas, watering down dusty areas, keeping people inside during windy conditions, constructing encased thoroughfares between buildings, employing breathing masks, and using solid fences instead of wire-mesh fences. (Wallach Decl., ¶ 5, Exh. D).

[60]Reply at 3.

[61]*Id.* at 4.

[62]Strauss Decl., ¶ 22.

[63]Government's Evidentiary Appendix, Exh. A at 25; Harvey Decl., ¶ 47; Strauss Decl., ¶ 37.

[64]Government's Evidentiary Appendix, Exh. A at 51; Strauss Decl., ¶ 28.

effected by the contractors;[65] no BOP employee had the authority to close the recreation yard.[66] No BOP employee was responsible for inmate safety and security, building and grounds maintenance, sanitation, health services, inmate orientation, inmate education, inmate recreation, inmate employment, or inmate discipline.[67]

Fekrat asserts, nonetheless, that the independent contractor exception does not apply because BOP had an independent, non-delegable duty to implement preventative measures under 18 U.S.C. § 4042. The Supreme Court rejected an analogous argument in *Logue*. See 412 U.S. at 528 ("Petitioners suggest that because 18 U.S.C. § 4042 imposes a duty on the Bureau of Prisons to 'provide for the safekeeping, care, and subsistence of all persons charged with . . . offenses against the United States . . .' the [contractor] employees who were discharging the Government's obligation by contract should be held to be employees of the Government for purposes of liability under the Act"). As stated earlier, the Court observed that "Congress not only authorized the Government to make contracts [for the care and custody of federal prisoners], but rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." *Id.* at 529. Accordingly, and notwithstanding § 4042's imposition of a duty to provide suitable housing for federal prisoners, the Court held that the independent contractor exception barred plaintiffs' claims to the extent they were based on operations wholly delegated to the contractor. *Id.* at 532. Given *Logue*, the court concludes that § 4042 does not provide an independent basis for a negligence claim against the BOP based on allegedly negligent operations at and maintenance of Taft.[68]

---

[65]Harvey Decl., ¶ 49; Strauss Decl., ¶ 39.

[66]*Id.*

[67]*Id.*

[68]In reaching this conclusion, the court does not hold that § 4042 creates no duty on the part of the BOP. It simply holds, as did the Supreme Court in *Logue*, that § 4042 does not provide a basis for holding the government liable for its contractors' breach of duties delegated to them.

Fekrat also asserts that the BOP had an independent duty as owner of the Taft property to make it safe or to warn adequately of the danger of Valley Fever.[69] He argues that the independent contractor exception does not shield the United States from liability for its "failure to keep safe or warn as a result of a pre-existing latent and dangerous condition on its premises."[70] As stated, however, the BOP contractually delegated responsibility to maintain the safety of the Taft facility to the GEO Group and MTC. The Ninth Circuit has held that the independent contractor exception precludes negligence claims based on premises liability where the government has delegated its responsibility as a landowner to maintain the premises to a contractor. See *Autery*, 424 F.3d at 958-59 ("The Plaintiffs' theory of negligence was premised upon a failure to maintain firebreaks along SR-24. The government argues, however, that there is no duty of a landowner as a matter of law specifically to utilize firebreaks in all circumstances. We need not reach this argument because, whether or not there was such a duty regarding firebreaks around SR-24, the contractual provisions plainly provide that 'fire prevention' was delegated by the DOE (and FWS) to contractors. The contracts necessarily encompassed decisions about firebreaks as well. . . . The independent-contractor exception bars this FTCA suit against the United States"); see also *Alvarado v. United States*, No. CV–F–09–243 LJO SMS, 2010 WL 3001391, *6 (E.D. Cal. July 29, 2010) ("Plaintiffs fail to establish that the government had an actionable duty to inspect or maintain Dos Amigos. . . . By contractual agreement . . . the government delegated operational and maintenance duties to the State, and is therefore not responsible for the negligent operation and maintenance at Dos Amigos. . . . [E]ven if [the] government as [a] landowner had [a] duty to maintain [a] safe environment . . . the contractual provisions delegating that duty precluded jurisdiction over plaintiff's claims based on [the] independent contractor exception to

_____

This conclusion does not preclude the assertion of a negligence claim based on the BOP's alleged breach of a duty imposed by § 4042 that was not contractually assigned to an independent contractor.

[69]Opposition at 8-9.

[70]*Id.* at 9.

20

FTCA," citing *Autery*, 424 F.3d at 959). Consequently, the court concludes that the independent contractor exception bars Fekrat's claims against the BOP based on its alleged failure to operate and maintain the Taft premises in a manner that would prevent inmates from contracting Valley Fever.

Fekrat also alleges that the United States was independently negligent for failing to warn him about the danger of contracting Valley Fever. For the reasons stated, the United States can not be held liable for its contractors' failure to provide warnings at Taft. See, e.g., *ABF Freight Sys., Inc. v. United States*, Nos. C 10–05188 SI, 11–04663, 2013 WL 3244804, *3 (N.D. Cal. June 26, 2013) ("Liability under the FTCA specifically does not include any contractor with the United States.' . . . Thus, the USA is not liable for the negligence of its contractors . . . . Plaintiffs must prove that the USA was independently negligent"). Fekrat may, however, state a FTCA claim based on the government's independently negligent failure to provide warnings regarding the danger of contracting Valley Fever. See *id.*; *Noel v. United States*, 893 F.Supp. 1410, 1422 (N.D. Cal. 1995) ("[T]he Government contends that the Noels' claims are barred because their alleged injuries were caused by an employee of an independent contractor. . . . However, the Noels have presented evidence supporting their claims that . . . the government failed to warn the Noels of the exposed pad-eyes, and that the government's failure to act caused their injuries. Thus, there are genuine issues of material fact as to whether, and to what extent, the Government or Faire Foods is responsible for the Noels' injuries. It is conceivable that the trier of fact may find that the Government, Faire Foods, and the Noels are all negligent, resulting in a comparative fault analysis. . . . Accordingly, the Government's motion for summary judgment is DENIED"); *McGarry v. United States*, 370 F.Supp. 525, 545 (D. Nev. 1973) ("*United States v. Pierce*, 235 F.2d 466 [(6th Cir. 1956)], and *United States v. Haskins*, 395 F.2d 503 [(10th Cir. 1968)], are directly on point. In both cases an employee of an independent contractor sustained injury as a result of negligent maintenance of an electrical distribution system, and the failure to warn the employee with regard to such system. In both cases the Court held that, although the independent contractor as the employer of the plaintiff could have discharged the duty, the Government nonetheless had the duty and was negligent in failing to discharge it, so

that the liability was imposed for the Government's breach of its own duty, rather than for the independent contractor's breach of a similar and corresponding duty"), aff'd in part, *McGarry v. United States*, 549 F.2d 587 (9th Cir. 1976); see also *Mason by Mason v. U.S. Postal Serv.*, No. 92-55498, 1993 WL 362247, *1 (9th Cir. Sept. 17, 1993) (Unpub. Disp.) ("Mason does not premise his claim of liability on any act or omission of the independent contractor. . . . Instead, Mason premises his claim of liability on the failure of Government employees to fulfill their nondelegable California State law duty as an occupier of land to warn. . . . Thus, there is no conflict between California State law and the FTCA in this case, and the district court erred in granting summary judgment against Mason in his personal injury suit against the Government").

Fekrat alleges that the government knew, independently of its contractors, that Valley Fever spores were present at Taft when it transferred him there,[71] and that it negligently failed to warn him of a dangerous condition known to it, i.e., that the prison's location was "regularly immersed in airborne dust" carrying Valley Fever spores.[72] He asserts that the government's failure to warn caused him to contract the disease. This claim is not based on any act or omission by MTC or the GEO Group. Rather, it is based on the government's own failure to take action after it received notice of the dangerous condition at Taft. Consequently, the court concludes that Fekrat's failure to warn claim is not barred by the independent contractor exception.[73] See *W.C.*

---

[71]Complaint, ¶¶ 32-33 (alleging the government's knowledge of Valley Fever at Taft based on lawsuits against it); *id.*, ¶ 38 (alleging the government's knowledge of Valley Fever based on lawsuits against it, and by the BOP's headquarters memorandum alerting medical staff to the dangers of Valley Fever).

[72]*Id.*, ¶ 56.

[73]Unlike his claim that the government failed to maintain the premises in a safe condition, Fekrat's failure to warn claim is not based on conduct "necessarily encompassed" by the BOP's contracts with MTC or the GEO Group. Compare *Autery*, 424 F.3d at 958-59. The contracts do not specifically delegate to the contractors the duty to provide all required warnings related to dangers at the Taft facility. Nor does the act of providing a warning necessarily fall within the scope of the contractors' responsibility to operate and maintain the institution. The BOP could have warned Fekrat about the danger of contracting Valley Fever without making changes to the

*& A.N. Miller Cos. v. United States*, 963 F.Supp. 1231, 1237 (D.D.C. 1997) ("The defendant asserts that, to the extent the plaintiff bases its action on the 1986 Photographic and Historical Report, it is immune from suit under the independent contractor provision. However, the defendant's invocation of the independent contractor provision is inappropriate in this case because the plaintiff's complaint does not challenge the actions of the independent contractor. Rather, the plaintiff claims that the Army was negligent in failing [to warn] after learning from its independent contractor that there were 'possible burial sites, shell and bomb pits, trenches and possible test areas.' This claim is not barred by the independent contractor provision"). Compare *ABF Freight Sys., Inc.*, 2013 WL 3244804 at *3 ("There is scant evidence that the USA was the cause of Mills's slip and fall. . . . [T]he evidence suggests that two SCG security guards saw the ramp about to be hosed or wet, but they failed to warn Mills. . . . [T]his failure to warn was committed by the USA's contractors, not the USA itself"). The court, therefore, declines to dismiss Fekrat's second cause of action to the extent it is based on the government's failure adequately to warn him of the danger of contracting Valley Fever at Taft.

Fekrat additionally argues that the BOP had a duty, as a landowner and under § 4042, to make structural changes to Taft that would have prevented him from contracting Valley Fever. He asserts, for example, that BOP failed to make preventative structural modifications such as covering up open-air passageways, replacing mesh-fences with solid wall fences, and building covered thoroughfares between buildings.[74] Fekrat adduces evidence that BOP maintained control over structural changes at the Taft facility.[75] The government has adduced no evidence controverting this evidence; it has not shown that the BOP's contracts with the GEO Group and MTC delegated responsibility to them make changes to the physical plant of the facility or to build

---

operation and maintenance of Taft; indeed, it could have given him a warning before it transferred him to that facility.

[74]*Id.* at 10.

[75]*Id.* (citing Feldman Decl., ¶ 7; *id.*, ¶ 5; *id.*, Exh. D.); Opp. at 6 (citing Feldman Decl., ¶ 14; Government's Evidentiary Appendix, Exh. A at 23; *id.*, Exh. B at 34).

23

additional structures. A landlord does not delegate its duty to make structural changes to a property to make it safe when it delegates the responsibility to maintain the premises to a lessee. See *Prudential Ins. Co. of America v. L.A. Mart*, 68 F.3d 370, 373-74 (9th Cir. 1995) (lease requiring that the lessee "make all necessary repairs" and "keep [the building] in good order and condition," did not mandate that it pay for seismic retrofitting of the property). The independent contractor exception does not, therefore, bar a claim against the United States based on the BOP's negligent failure to make structural changes at Taft that were necessary to prevent inmates from contracting Valley Fever.

Fekrat has not alleged a claim based on negligent failure to make structural changes, however. The complaint does not identify the structural changes referenced in his opposition as preventative measures the government and/or its contractors allegedly failed to implement; the only preventative measures pled concern the operation and maintenance of the existing prison.[76]

Similarly, Fekrat argues that the BOP was independently negligent in formulating and carrying out its policy response to the Valley Fever epidemic at Taft.[77] He contends that the BOP recognized the existence of the epidemic and contacted the CDC to develop a plan to address it.[78] Although the CDC wanted to investigate the outbreak and develop preventative measures to stop the spread of the disease, the BOP purportedly limited its efforts to early diagnosis and treatment, and did not attempt to protect inmates who were not yet infected.[79] Fekrat asserts that the policy

---

[76]See Complaint, ¶ 19 (identifying "watering down dusty areas, planting grass or shrubs over dusty areas, and keeping individuals inside during windy conditions" as preventative measures); *id.*, ¶ 42 (alleging that defendants were negligent in failing to provide Fekrat with special protective breathing masks or other devices; failing to employ special air conditioning equipment to filter out the dust; failing to prohibit outdoor activities during dusty conditions; failing to cover dust on the ground of the facility with grass or shrubs; in to water down or oil the dust; and failing to keep inmates inside during windy conditions).

[77]Opp. at 10-11.

[78]*Id.* at 3-4 (citing Wallach Decl., ¶ 9).

[79]*Id.* (citing Wallach Decl., ¶ 11). It is not clear, based on Fekrat's factual assertions, whether BOP's abandonment of efforts to study and develop preventative measures was based on

the BOP ultimately adopted – "the BOP Taft-Valley Fever Policy" – protected only infected inmates and a small number of non-infected inmates who suffered from other medical conditions that compromised their immune systems.[80]

There is no evidence that the BOP delegated to its contractors responsibility for coordinating or assisting the CDC's investigation of Valley Fever or its development of a policy to address it. To the contrary, Fekrat adduces evidence that the BOP mandated that its employees and CDC employees not discuss the epidemic with other parties – including the Taft contractors.[81] The independent contractor exception may not, therefore, bar a claim against the United States based on the BOP's own negligent study and formulation of a response to the Valley Fever epidemic.[82] *W.C. & A.N. Miller Cos.*, 963 F.Supp. at 1237 ("The plaintiff claims that the Army was negligent in failing to take appropriate action after learning from its independent contractor that there were [buried munitions.] This claim is not barred by the independent contractor provision"). Cf. *Dickerson, Inc. v. United States*, 875 F.2d 1577, 1582 (11th Cir. 1989) ("[A]lthough the United States is not liable under the FTCA for the negligence of an independent contractor, it may be liable, just as any private citizen would be, under an applicable state tort theory for its own negligence in failing to prevent harm to third parties. . ."); *Suro v. United States*, 107 F.Supp.2d 206, 208 (E.D.N.Y. 2000) ("Here, plaintiffs' allegations can be read to claim liability that is based, not on a non-delegable duty to maintain the premises or on the theory that the government should be vicariously liable for the acts or omissions of its contractor, but

---

a policy judgment or on some other reason.

[80]*Id.* at 4 (citing Wallach Decl., ¶¶ 7, 16, 18).

[81]*Id.* at 3 (citing Wallach Decl., ¶ 20).

[82]It is possible that, had the BOP not elected to focus exclusively on early diagnosis and treatment in developing the "the BOP Taft-Valley Fever Policy," it and the CDC could jointly have formulated a response to the epidemic that called for preventative measures outside the scope of the BOP's contracts with GEO and/or MTC. The CDC, for example, could have investigated, developed, and/or recommended, and the BOP could have adopted, a preventative policy requiring transfer of any inmate whose skin test did not indicate immunity to Valley Fever to an institution other than Taft.

rather on direct acts of negligence on the part of the government, namely its failure to notify [the contractor] of the presence of an infant child at the premises [of a building with lead paint]. . . . [T]he government's omission constitutes an allegation of direct negligence on the part of the United States and, thus, provides a sufficient basis for the exercise of subject matter jurisdiction").

Fekrat has not alleged a claim based on these facts, however. The complaint does not identify the BOP's election not pursue the study and development of preventative measures in cooperation with the CDC as a basis for Fekrat's claims against the government. Indeed, the facts Fekrat discusses in his opposition concerning the BOP Taft-Valley Fever Policy are nowhere alleged in the complaint.

Fekrat asserts other claims, however, that are not based on the operation and maintenance of the prison. Fekrat's first cause of action is based, in part, on an allegation that the United States negligently incarcerated him at Taft, even though it knew that the prison was located on a site regularly immersed in dust containing Valley Fever.[83] He asserts that the BOP knew of the danger of Valley Fever at Taft, knew that the disease was potentially deadly, and knew that any federal inmate assigned to the prison was in greater danger of contracting the disease due to its physical location.[84] He alleges that the BOP should have re-designated any inmate at Taft who did not have a skin test indicating immunity to Valley Fever, or should shut down the facility as too dangerous for human habitation.[85] Fekrat's third cause of action is based on allegations that the government breached its duty to place him in suitable quarters under 18 U.S.C. § 4042 by assigning him to Taft.[86]

There is no evidence that the BOP delegated to MTC any responsibility for designation decisions. The evidence shows only that MTC was responsible for providing habitable quarters

---

[83]*Id.*, ¶ 52.

[84]*Id.*, ¶ 38.

[85]*Id.*

[86]*Id.*, ¶¶ 58-59.

for inmates assigned to Taft; it does not indicate that MTC was responsible for deciding which inmates were placed at that facility. Nor does the evidence show that MTC was responsible for deciding to discontinue prison operations at a facility deemed too dangerous for human habitation.

The court concludes, therefore, that the independent contractor exception does not bar Fekrat's first and third causes of action against the BOP[87] to the extent they are based on the agency's allegedly negligent assignment of inmates to Taft, and/or its allegedly negligent continued use of the facility for prison operations.[88] See *Logue*, 412 U.S. at 532-33 ("While we . . . agree with the conclusion of the Court of Appeals that the Government was not liable for the negligence of the employees of Nueces County, we disagree with its implicit determination that such a conclusion ends the case. For the District Court imposed liability on the Government, not only for the negligent acts of employees of the Nueces County sheriff, but also for negligent acts of Deputy Marshal Bowers, who was concededly an employee of the Government. The District Court found that Bowers, knowing of the prisoner's suicidal tendencies, should have made 'specific arrangements . . . for constant surveillance of the prisoner,' and that his failure to do so was negligence. . . . We therefore vacate the judgment of the Court of Appeals and remand the case for consideration of the liability of the Government insofar as that liability may be based on the negligence of Deputy Marshal Bowers"); *Baires v. United States*, No. C 09–05171 CRB, 2011

---

[87]Fekrat's second cause of action is based entirely on the BOP's failure to operate and maintain the Taft facility in a safe and habitable condition. (See *id.* at 15.) As stated, BOP delegated its responsibility to operate and maintain Taft to MTC; consequently, Fekrat's entire second cause of action is barred by the independent contractor exception.

[88]Because the government's motion is a jurisdictional challenge under Rule 12(b)(1), the court need not consider the underlying merits of Fekrat's negligence claims against the BOP as it would in deciding a Rule 12(b)(6) motion to dismiss. To determine that the independent contractor exception does not apply to the claims, it is enough for the court to find that the claims are based on the BOP's own negligence, rather than on the actions of its contractors. See *Gottlieb v. United States*, 624 F.Supp.2d 1011, 1023 (S.D. Ind. 2008) ("Gottlieb's accusations are speculative and legally unsupported, but the independent contractor defense does not bar his claims based on the actions of the BOP employees. The hospital and its physicians were independent contractors, but the BOP employees were not. His claims against the government employees are sufficiently distinct from his claims against the hospital and its physicians so that his claims of government negligence survive the independent contractor defense").

WL 6140998, *6 (N.D. Cal. Dec. 9, 2011) ("the independent contractor exception bars the allegations in the SAC that pertain to independent contractors, but not those that pertain to federal employees"); see also *Berrien v. United States*, 711 F.3d 654, 659 (6th Cir. 2013) ("To be sure, the contractor exception might not apply if the negligence of a government employee, rather than that of a contractor, forms the basis for liability. Although the contractor exception shields the government from liability for the actions of its contractors, it does not shield the government from liability for the government's own negligent acts," citing *Logue*, 412 U.S. at 532-33).

### III. CONCLUSION

For the reasons stated, the court dismisses Fekrat's first and third causes of action with prejudice to the extent they are based on the BOP's allegedly negligent failure to implement preventative measures falling within the scope of duties it contractually delegated to GEO Group and MTC. The court also dismisses Fekrat's second cause of action with prejudice to the extent it is based on the government's failure to maintain and operate the prison in a safe and habitable condition. The government's motion to dismiss for lack of jurisdiction is otherwise denied. The court grants Fekrat leave to amend for the sole purpose of alleging facts that would support claims that (a) the BOP negligently failed to make structural changes to Taft that would have prevented him from contracting Valley Fever, and/or (b) the BOP was negligent in its study and formulation of a response to the Valley Fever epidemic at Taft because it failed to adopt the approach suggested by the CDC. Fekrat may file an amended complaint within twenty (20) days of the date of this order.

DATED: August 6, 2013

_Margaret M. Morrow_
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE